United States Court of Appeals
Fifth Circuit

**F I L E D**

**August 23, 2005**

Charles R. Fulbruge III
Clerk

**IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

———————————————

No. 04-70038

———————————————

ROBERT JAMES NEVILLE,

Petitioner-Appellant,

versus

DOUGLAS DRETKE, Director, Texas Department of
Criminal Justice, Correctional Institutions Division,

Respondent-Appellee.

———————————————————————

Appeal from the United States District Court
For the Northern District of Texas

———————————————————————

Before GARZA, DEMOSS, and CLEMENT, Circuit Judges.

EDITH BROWN CLEMENT, Circuit Judge:

The petitioner, Texas death row prisoner Robert James Neville, has been convicted of murder

in the course of kidnapping and sentenced to death by a jury. The Texas Court of Criminal Appeals

affirmed his conviction on direct appeal,[1] and denied his state habeas corpus petition which claimed

---

[1]Initially, Neville requested a waiver of all appeals, and to be executed "as soon as legally possible." However, because criminal appeals in Texas are automatic, the Texas Court of Criminal Appeals, without a brief from Neville, reviewed the record for fundamental error. Finding none, it affirmed the conviction.

1

ineffective assistance of counsel. Neville then filed a petition with the federal district court pursuant to 28 U.S.C. § 2254, stating several claims in addition to his ineffective assistance of counsel claim. The district court denied the ineffective assistance of counsel claim on the merits, and denied the other claims on the grounds of procedural default. Neville requests a certificate of appealability ("COA") to allow him to appeal the denial of his petition.

I.

On February 15, 1998, in Arlington, Texas, Amy Robinson failed to report to work at the Kroger grocery store at 1:00 p.m and was reported missing. She was last seen leaving her house on her bicycle to ride to work. In the course of the investigation of Robinson's disappearance, the police contacted Robert James Neville and Michael Hall, Robinson's former co-workers. Neville told the police that he was acquainted with Robinson personally and professionally, but that he did not have any information about her disappearance.

On February 28, the police were alerted by Hall's mother that Hall had been missing for several days. Hall's stepbrother told police that Hall had confided that he and Neville had abducted and killed Robinson. A warrant for their arrest was subsequently issued.

On March 3, Hall and Neville were arrested by the U.S. Customs Service in Eagle Pass, Texas, near the Mexican border. Neville admitted that he saw Robinson while driving with Hall around Arlington around 12:00 p.m. on February 15th, that he and Hall asked her if she wanted a ride to work, and that she accepted the ride. He confessed that they stopped in a remote field in the Moslier Valley around 12:45 p.m. where Hall first shot Robinson in the leg with pellet gun, and then shot her with a seven round .22-caliber rifle. Neville told the police that he also shot Robinson, both in the chest and the head with a rifle. He later revealed the location of Robinson's body on a map, and

2

the agents found her body.

Neville was tried for murder in the course of kidnapping, a capital offense under Texas state law. TEX. PENAL CODE §§ 19.02(b)(1) (murder); 19.03(a)(2) (capital murder). A jury convicted him, and sentenced him to death. The Texas Court of Criminal Appeals affirmed his conviction on direct appeal, and denied a subsequent petition for writ of habeas corpus, which claimed ineffective assistance of counsel. Neville filed a petition for writ of habeas corpus in federal district court, raising five claims including that he is actually innocent of the charge of kidnapping; that he was denied effective assistance of counsel because his counsel failed to question the jurors during voir dire about lupus, a disease that Neville claims affects his personality; that the Texas death penalty scheme unconstitutionally limits the jury's discretion; that the Texas clemency procedures violate substantive and procedural due process; and that the death penalty violates an international treaty, the International Covenant on Civil and Political Rights ("ICCPR"), which is binding on the United States. The federal district court denied his petition, dismissing the ineffective assistance of counsel claim on the merits, and dismissing the other claims on grounds of procedural default. Neville seeks a COA to appeal the denial.

## II.

The Antiterrorism and Effective Death Penalty Act ("AEDPA") governs our decision about whether to issue a COA. 28 U.S.C. §§ 2241 *et seq*. *See Lindh v. Murphy*, 521 U.S. 320, 335 (1997) (applying AEDPA to all habeas petitions filed on or after April 24, 1996). Under AEDPA, the petitioner must obtain a COA before we consider an appeal of the district court's denial of a petition. 28 U.S.C. § 2253(c)(2). A petitioner obtains a COA when he makes "a substantial showing of the denial of a constitutional right." *Id*. This standard is satisfied by demonstrating that reasonable jurists

3

could debate the district court's resolution of the constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further. *See Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). Until a COA has been issued, federal courts lack jurisdiction to rule on the merits of appeals from habeas petitioners. *Id*. at 336.

A.

The district court concluded that the majority of Neville's claims were procedurally defaulted. This conclusion is not one that reasonable jurists might debate. We, therefore, decline to issue COAs on any of the procedurally defaulted issues.

Neville did not present four of five of his habeas claims to the Texas state court. His state habeas application did not assert that he was actually innocent of kidnapping; that the Texas death penalty unconstitutionally limits jury discretion; that the Texas clemency procedures violate substantive and procedural due process; or that the death penalty violates the ICCPR. These claims, therefore, are not exhausted.

Under AEDPA, the district court cannot grant habeas relief unless the applicant has exhausted available state court remedies. 28 U.S.C. § 2254(b)(1)(A). *See Elizalde v. Dretke*, 362 F.3d 323, 328 (5th Cir. 2004); *Cotton v. Cockrell*, 343 F.3d 746, 755 (5th Cir. 2003). To exhaust, the applicant must fairly present the substance of his claims to the state court. *See Picard v. Connor*, 404 U.S. 270, 275–76 (1971); *Nobles v. Johnson*, 127 F.3d 409, 420 (5th Cir. 1997). The exhaustion requirement is not satisfied, therefore, where the petitioner presents new legal theories or factual claims in his federal habeas petition. *Bagwell v. Dretke*, 372 F.3d 748, 755; *Nobels*, 127 F.3d at 420; *Anderson v. Harless*, 459 U.S. 4, 6–7 (1982).

4

Neville argues that although he has not explicitly presented his actual innocence claim in state court, it is exhausted nonetheless. He claims that the Texas Court of Criminal Appeals had a full and fair opportunity to review his claim of actual innocence because, on direct appeal, the Texas Court of Criminal Appeals reviewed the record for fundamental error. A review for fundamental error, Neville argues, necessarily includes a review for actual innocence.

However, as Neville himself acknowledges, he has not presented the details of his actual innocence claim to the state court for full and fair review. Rather, the state court, of its own initiative pursuant to state law, reviewed his case without the assistance of a brief from the petitioner. To suppose that they could have anticipated and carefully considered the particular claim that Neville now makes—that his conviction for kidnapping was supported by constitutionally insufficient evidence—is a stretch of the imagination.

In addition, the Supreme Court has found that not only must a petitioner present the state court with his claim, but he must also alert the state court of the constitutional nature of the claims. *See Duncan v. Henry*, 513 U.S. 364, 366 (1995) ("If state courts are to be given the opportunity to correct alleged violations of prisoners' federal rights, they must surely be alerted to the fact that the prisoners are asserting claims under the United States Constitution."). Review for fundamental error, however, is review for error under state law, and not federal law. *See G.A.O. v. State*, 854 S.W.2d 710, 715 (Tex. App.-San Antonio 1993) (noting that fundamental error is error that "directly and adversely affects the interest of the public generally, as such interest is declared in statutes or the constitution of the State."). And even if a review for fundamental error included some sort of review of the sufficiency of the evidence under state law, the mere similarity of claims is insufficient to satisfy the exhaustion requirement. *See id.* (citing *Picard*, 404 U.S. at 276; *Anderson v. Harless*, 459 U.S.

5

4, 6 (1982)). Because Neville neither explicitly presented his claim in state court nor alerted the state court to the constitutional nature of his claims, the Texas court did not have fair opportunity to review the substance of Neville's particular argument of actual innocence and his claim was not exhausted in state court.

B.

Neville acknowledges that his additional claims are unexhausted. He requested a stay from the district court to file a successive habeas petition with Texas to exhaust his claims. The district court, finding Neville's unexhausted claims procedurally barred, declined to grant a stay. Neville now requests a stay from this Court.

Such stays are available only under limited circumstances. "Because granting a stay effectively excuses a petitioner's failure to present his claims first to state courts, stay and abeyance is only appropriate when the district court determines there is good cause for the petitioner's failure to exhaust his claims first in state court. Moreover, even if a petitioner had good cause for that failure, the district court would abuse its discretion if it were to grant him a stay when his unexhausted claims are plainly meritless." *Rhines v. Weber*, 125 S.Ct. 1528, 1535 (2005). Neville offers neither good cause nor a potentially meritorious claim. A stay merely would prolong federal habeas review to no avail, contravening AEDPA's goal of "finality and speedy resolution of federal petitions." *Id.* at 1535. Therefore, the district court properly declined to grant a stay, and we decline to issue one as well.

C.

Neville's unexhausted claims are "plainly meritless" because he is now procedurally barred from raising those claims in state court. Except under extraordinary circumstances, Texas law does not permit successive petitions. TEX. CODE CRIM. PROC. 11.071, § 5(a) (listing narrow exceptions

6

to prohibition on successive claims). Neville had his opportunity to file all his claims in his first state habeas petition, and failed to do so. He points to no good cause for his failure. Because he does not fall into any of the narrow statutory exceptions, Texas law now precludes the state court from hearing his additional claims. The claims will remain, therefore, unexhausted.

The unexhausted claims, which Neville no longer can raise in state court, have been procedurally defaulted. *Coleman v. Thompson,* 501 U.S. 722, 735 n.1 (1991) (noting that a procedural default occurs when a prisoner fails to exhaust available state remedies and "the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred"). The procedural default doctrine has its roots in the general principle that federal courts should not disturb state court judgments based on adequate and independent state law procedural grounds. *See Dretke v. Haley*, 541 U.S. 386, 392 (2004); *Wainwright v. Sykes*, 433 U.S. 72, 81 (1977). The doctrine derives from prudential concerns about comity and the orderly administration of justice. *See Haley*, 541 U.S. at 392. Because our concerns are prudential, and not jurisdictional, we reserve an equitable exception to the bar on federal review of procedurally defaulted claims where a petitioner can demonstrate "cause for the default and actual prejudice as a result of the alleged violation of federal law" or "that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750.

To establish cause, Neville must demonstrate that some objective factor external to the defense impeded his counsel's efforts to comply with the State's procedural rule. *See Murray v. Carrier*, 477 U.S. 478, 488 (1986). Neville failed to present evidence of such an external factor. In

7

his direct appeal, he knowingly and willingly waived his right to raise any claims on appeal.[2] At the time his state habeas petition was filed, both the factual and legal bases of his claims were available, and Neville made no allegations that an official or any other party interfered and prevented Neville from filing all his claims in his first petition. *Id.* at 488 (elaborating external factors sufficient to establish "cause").

Because the cause and prejudice standard is not a perfect safeguard against fundamental miscarriages of justice, the Supreme Court also has recognized a narrow exception for "actual innocence." In the capital sentencing context, that exception applies where the petitioner can show "by clear and convincing evidence that, but for the constitutional error, no reasonable juror would have found the petitioner eligible for the death penalty under the applicable state law." *See Sawyer v. Whitley*, 505 U.S. 333, 336 (1992). Neville contends that he is actually innocent of the kidnapping conviction, the aggravating offense that made him eligible for the death penalty. TEX. PENAL CODE § 19.03(a)(2). Given the evidence presented at trial, he asserts that no rational juror could have found proof of guilt beyond a reasonable doubt. *See Jackson v. Virginia*, 443 U.S. 307, 315–16 (1979) (noting that the due process clause of the Fourteenth Amendment guarantees "that no person shall be made to suffer the onus of a criminal conviction except upon sufficient proof—defined as evidence to convince a trier of fact beyond a reasonable doubt of the existence of every element of the offense" (citing *In re Winship*, 397 U.S. 358, 364 (1970)).

---

[2] Following the submission of a letter stating that he wanted to waive his right to appeal, Neville was brought before the Texas state district court to be informed of his right to appeal and questioned about his desire to waive his appeal. After questioning Neville, the court held that the waiver was "voluntary and intelligently made." The Texas Court of Criminal Appeals affirmed the Texas district court's finding that the waiver was informed and voluntary. *Neville v. Texas*, No. 73,368 (Tex. Crim. App. 1999) (unpublished).

Neville errs when he asserts that there is "not one shred of evidence" to support the kidnapping conviction. Under Texas law, kidnapping is the intentional or knowing abduction of another person. TEX. PENAL CODE § 20.03. To "abduct" means to restrain a person with the intent to prevent his liberation by either (1) secreting or holding her in place where she is not likely to be found or (2) using or threatening to use deadly force. TEX. PENAL CODE § 20.01(2). "Restrain" means to restrict a person's movements without consent, so as to interfere substantially with her liberty, by moving her from one place to another or by confining her. TEX. PENAL CODE § 20.01(1). Restraint is without consent when it is accomplished by force, intimidation, or deception. TEX. PENAL CODE § 20.01(1)(A). Evidence exists that Neville and Hall indeed abducted Robinson. Neville does not contest that he and Hall picked up Robinson in their car, that they deceived her by indicating that they would take her to work, that at that time they had guns in their possession, that Robinson rode in the car with them to a remote field, and that, once at the field, Neville and Hall shot and killed her. Given these uncontested facts, viewed in a light most favorable to the prosecution, a reasonable juror could have reached the conclusion that Neville had abducted the victim using deception. *See Jackson*, 443 U.S. at 319 ("The relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."). *See also Santellan v. Cockrell*, 271 F.3d 190, 194–96 (5th Cir. 2001) (finding evidence sufficient to uphold a jury verdict convicting the defendant of murder in the course of attempted kidnapping, where the defendant had a gun, stalked his victim, and then shot her); *Rayford v. State*, 125 S.W.3d 521, 526 (Tex. Crim. App. 2003) (finding sufficient evidence to uphold a conviction for murder in the course of kidnapping where the defendant pursued the victim with a knife, knocked her down, beat her, and then carried her 300 feet into a drainage pipe where he killed

9

her). Therefore, reasonable jurists would agree that the "actual innocence" exception to the procedural default doctrine does not apply in this case.

Reasonable jurists would agree with the district court conclusion that Neville has procedurally defaulted those claims not raised in his first habeas petition. It is appropriate, therefore, to deny Neville's request for a COA on his unexhausted claims.

III.

In *Rose v. Lundy*, the Supreme Court held that federal district courts may not adjudicate mixed petitions for habeas corpus, that is, petitions containing both exhausted and unexhausted claims. 455 U.S. 509, 510 (1982). AEDPA retained this "total exhaustion" requirement as prerequisite for a district court to *grant* a petition. 28 U.S.C. § 2254(b)(1)(A). *See also Rhine v. Weber*, 125 S.Ct. 1528, 1532–34 (2005) (reaffirming the "total exhaustion" requirement). However, consistent with its goal of providing for the speedy resolution of federal petitions, AEPDA provides that applications may be denied on the merits, "notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(2). Therefore, it was within the district court's discretion to deny Neville's ineffective assistance of counsel claim on the merits, even though the claim was improperly presented to the federal district court as part of a mixed petition.

To determine whether a COA should issue, we consider whether Neville made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2); *Miller-El*, 537 U.S. at 327. This inquiry is a threshold inquiry only, and does not require full consideration of the factual and legal bases of Neville's claim. *Miller-El*, 537 U.S. at 336. Rather, we issue a COA if Neville proves that "'reasonable jurists would find the district court's assessment of the constitutional claims debatable

10

or wrong.'" *Id*. at 338 (quoting *Slack*, 529 U.S. at 484).

A.

Neville claims that his trial counsel provided ineffective assistance by failing to question potential jurors during voir dire about their position on lupus and the effect of the disease on the personality of an individual. He claims that because his lupus defense was his "linchpin defense," the failure to question the jurors on the topic affected the outcome of the punishment phase.

The Sixth Amendment provides for the right to counsel, and the Supreme Court has recognized that "'the right to counsel is the right to effective assistance of counsel.'" *Strickland v. Washington*, 466 U.S. 668, 686 (1984) (quoting *McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970)). A showing of ineffective assistance of counsel has two components. First, Neville must show that his counsel's performance was deficient. *Id.* at 687. Second, he must show that he was actually prejudiced by the deficient performance. *Id*. The district court held that Neville failed to establish both deficient performance and prejudice. We consider whether this conclusion is one that reasonable jurists could debate.

B.

Deficient performance is determined by examining whether the challenged representation fell below an objective standard of reasonableness under prevailing professional norms. *Rompilla v. Beard*, 125 S.Ct. 2456, 2462 (2005) (citations omitted). Because there are countless ways to provide effective assistance of counsel in any given case, Neville must overcome the presumption that, under the circumstances, his lawyer's failure to question the jurors during voir dire on the issue of lupus was sound trial strategy. *Strickland*, 466 U.S. at 689.

Neville failed to overcome this presumption. Not questioning the potential jurors about their

11

opinions on lupus certainly could have been a reasonable strategic decision. Neville's counsel could have been trying to keep secret his plan to introduce evidence of lupus as a defense, or he could have been concerned that, if a potential juror responded in a favorable manner to the proposed lupus defense, the prosecution might exercise a strike against that potential juror. Neville failed to introduce any evidence that such strategies in fact were unreasonable.

Even if Neville had established that his counsel's performance was deficient, he would also have had to establish that "prejudice caused by the deficiency is such that there is reasonable probability that the result of the proceedings would have been different." *Ransom v. Johnson*, 126 F.3d 716, 721 (5th Cir. 1997). Neville made no such showing. First, he failed to show that any particular juror was in fact prejudiced against the lupus defense. Second, he failed to establish that, even if Neville's counsel had indeed questioned the jurors about lupus, the jurors would have found the lupus evidence persuasive enough to affect the outcome.[3]

Neville failed to establish that reasonable jurists could debate whether Neville satisfied the *Strickland* test for ineffective assistance of counsel. He established neither deficient performance nor prejudice. Therefore, we deny his request for a COA on his claim of ineffective assistance of counsel.

CONCLUSION

Because reasonable jurists could not debate the conclusions of the district court, that four of Neville's claims are procedurally barred, and that Neville has failed to put forward sufficient evidence to establish that he was denied effective counsel, we DENY Neville's application for a COA on each of the issues raised. Without a COA, we lack jurisdiction to review the district court's denial of

---

[3] The evidence suggesting that Neville had lupus and that it affected his personality was not conclusive. At trial, the prosecution put forward evidence both that Neville did not have lupus, and that lupus was not the cause of his behavior.

habeas relief.