# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

December 21, 2012

No. 12-70005

Lyle W. Cayce
Clerk

JUSTEN HALL,

Petitioner-Appellant,

versus

RICK THALER, Director,
Texas Department of Criminal Justice, Correctional Institutions Division,

Respondent-Appellee.

Appeal from the United States District Court
for the Western District of Texas
No. 3:10-CV-135

Before DAVIS, SMITH, and PRADO, Circuit Judges.

JERRY E. SMITH, Circuit Judge:[*]

Justen Hall was convicted of murder and sentenced to death. He peti-
tioned for a federal writ of habeas corpus under 28 U.S.C. § 2254. The district

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not
be published and is not precedent except under the limited circumstances set forth in 5TH CIR.
R. 47.5.4.

No. 12-70005

court denied the petition and a request for a certificate of appealability ("COA"). We deny Hall's request for a COA and his motion to stay appellate proceedings.

## I.

One evening in 2002, Hall and several members of the Aryan Circle gang gathered at Chase Hale' residence, a known drug house used for cooking methamphetamine. Melanie Billhartz arrived there, upset after an argument with Ted Murgatroyd, who was at the house. Murgatroyd and Billhartz left in Billhartz's truck. Their disagreement grew physical, but both returned to the house —Murgatroyd on foot and Billhartz in her truck. Billhartz threatened to call the police to report Murgatroyd for assault. A group including Hall, Murgatroyd, and Jesse Eddy discussed how to respond. Hale told the group that Billhartz should be killed to keep the police from discovering the methamphetamine.

Hall drove Billhartz from the house, returning later with her body in the bed of her truck. The autopsy showed that she had been strangled with a power cord, and her body suffered fractures and contusions. Upon returning to the house, Hall enlisted Murgatroyd's help burying Billhartz in the desert after using a machete to cut off her fingers.

Murgatroyd led police to the body after they questioned him about Billhartz's disappearance. The same day, the police, seeing Hall driving Billhartz's truck, took him into custody along with Eddy and Eddy's girlfriend and baby. Eddy's statement to police confirmed Murgatroyd's story. Detectives interrogated Hall, who initially denied involvement but later confessed.

## II.

Hall was indicted for capital murder, and was tried in early 2005. Hall filed motions to suppress his confession and for a continuance so he could obtain an evaluation from an addiction specialist as to whether his confession was

No. 12-70005

involuntary and so that he could make further tests of physical evidence and could interview the state's witnesses. The state trial court denied the motions.

After twelve days of trial, the jury found Hall guilty.[1] During the punishment phase, the state presented evidence about Hall's behavior while incarcerated and his criminal history, including another murder.[2] The defense provided testimony from Hall, Hall's father, his stepmother, a psychiatrist, and some acquaintances, attempting to show Hall's rough upbringing and his psychological state and to bolster his character. The jury found that Hall was capable of committing future violent acts against society and that there were insufficient mitigating circumstances to warrant a life sentence rather than death.

Hall appealed in 2006 to the Texas Court of Criminal Appeals ("CCA"), which affirmed in 2007. Hall did not file a petition for writ of certiorari.

Hall filed a petition for writ of habeas corpus in state court in 2007. The state court held an evidentiary hearing in July 2008, receiving testimony from trial counsel—the two district attorneys and Hall's surviving counsel. In September 2008, Hall filed a motion to dismiss his state habeas application. The trial court held a hearing in March 2009 to address Hall and review the mental-health reports related to the motion to dismiss.

At the hearing, Hall insisted that although he did not wish to waive habeas review, he wanted the application and counsel dismissed, after which he

---

[1] Hall was represented by several lawyers over the course of these proceedings. Because he makes a claim of ineffective assistance of counsel ("IAC"), we provide a basic timeline.

After Hall was indicted, the state appointed Jaime Olivas, and Charles McDonald appeared as co-counsel. Hall asked the court to replace Olivas with McDonald. Because of the court's concerns about McDonald's inexperience with capital cases, Olivas was withdrawn, and Frank Macias was appointed lead counsel. On direct appeal, Louis Lopez represented Hall, and Robin Norris was counsel for the habeas petition. Both Lopez and Norris sought to review the trial counsels' records. McDonald, who had possession of the records, committed suicide in 2005, and the records were never recovered.

[2] Hall had been released on bail for the other murder when he murdered Billhartz.

No. 12-70005

would proceed *pro se* and refile.  The court issued an order three days later, recommending the CCA dismiss the habeas petition and allow counsel to withdraw, based on Hall's competent demand, despite the court's cautioning about the legal consequences.  The court also appointed support counsel to assist Hall.

Three weeks later, Hall sent a *pro se* letter to the trial court and CCA requesting the trial court withdraw the order and dismiss his standby counsel.  The CCA issued a per curiam order in June 2009, acknowledging the letter but dismissing the state habeas petition.[3]

Instead of refiling in state court,[4] Hall filed a habeas corpus petition in federal court.  In December 2011, the district court denied Hall's petitions for habeas relief, an evidentiary hearing, and a COA.

Hall seeks a COA before this court, raising several of his prior claims: (1) that the state withheld evidence about witness agreements in violation of due process, *see Brady v. Maryland*, 373 U.S. 83 (1963); (2) that he was denied effective assistance of counsel under the Sixth Amendment, *see Strickland v. Washington*, 466 U.S. 668 (1984); and (3) that the denial of a continuance violated due process.  In addition, Hall filed a motion to stay appellate proceedings to allow him to return to state court to pursue additional remedies.  We deny the request for continuance and a COA.

III.

Before a federal habeas petitioner can appeal, he must obtain a COA, which "may issue . . . only if the applicant has made a substantial showing of the

---

[3] With the assistance of counsel, Hall sent an additional letter asking the CCA to reconsider the dismissal on its own motion.  The CCA issued a document in response titled "No Action Taken."

[4] Texas offers procedures for untimely and subsequent applications under Texas Code of Criminal Procedure article 11.071 §§ 4A, 5.

denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Assuming the federal district court decided the claims on the merits, "the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Feldman v. Thaler*, 695 F.3d 372, 377 (5th Cir. 2012) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). Whether a COA will issue is a threshold inquiry, "requir[ing] an overview of the claims in the habeas petition and a general assessment of their merits." *Miller–El v. Cockrell*, 537 U.S. 322, 336 (2003). In a death penalty case, "any doubts as to whether a COA should issue must be resolved in the petitioner's favor."[5] The "question is the debatability of the underlying constitutional claim, not the resolution of that debate." *Miller–El*, 537 U.S. at 342.

When the state has adjudicated the claims on the merits, the district court reviews the state decision under the deferential standards of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). *See, e.g.*, *Feldman*, 695 F.3d at 377 n.16. Under AEDPA, the district court will not grant habeas relief unless the adjudication

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). To determine whether a COA should issue, this court then asks whether reasonable jurists could debate the district court's application of AEDPA. *Feldman*, 695 F.3d at 377.

Where the state court did not reach the merits of a claim, the federal dis-

---

[5] *Mitchell v. Epps*, 641 F.3d 134, 142 (5th Cir. 2011), *cert. denied*, 132 S. Ct. 1537 (2012) (quoting *Ramirez v. Dretke*, 398 F.3d 691, 694 (5th Cir. 2005)).

No. 12-70005

trict court reviews the constitutional claims *de novo. Cone v. Bell*, 556 U.S. 449, 472 (2009). To determine whether a COA should issue under § 2253(c), this court then asks whether the petitioner has shown that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack*, 529 U.S. at 484.

IV.

The parties debate whether the *Brady*, *Washington*, and denial-of-continuance claims should be rejected for Hall's failure to exhaust his state-court remedies.[6] If "the court to which he would be required to return to meet the exhaustion requirement would now find the claim procedurally barred, then there has been a procedural default for purposes of federal habeas corpus relief." *Wilder v. Cockrell*, 274 F.3d 355, 262 (5th Cir. 2001) (citing *Finley v. Johnson*, 243 F.3d 215, 220 (5th Cir. 2001). The CCA, when dismissing Hall's state habeas claim, acknowledged the "likely procedural bar":

> If applicant's intent is to start over and file a *pro* se initial writ application, or even to supplement or amend the already filed application, his request comes far too late. An initial application has been filed, and the statutory time for filing has passed. Any *pro se* document filed at this stage, whether replacing the originally filed application or attempting to supplement it with additional claims, will be considered a subsequent application subject to review under Article 11.071, § 5. Nonetheless, applicant is certainly free to file a subsequent application, and it will be reviewed according to the dictates of the statute.

*Ex parte Hall*, No. WR-70834-01, 2009 WL 1617087, at *2 (Tex. Crim. App. June 10, 2009) (per curiam).

---

[6] *See* § 2254(b); *Ruiz v. Quarterman*, 460 F.3d 638, 642 (5th Cir. 2006) ("This requirement is designed to give state courts the initial opportunity to pass upon and, if necessary, correct errors of federal law in a state prisoner's conviction or sentence."); *Wilder v. Cockrell*, 274 F.3d 255, 259 (5th Cir. 2001) (requiring all claims to be "fairly presented" to the state courts).

No. 12-70005

Hall responds that even if he failed to exhaust, he has good cause and is excused from default.[7] In addition, he argues that he is not procedurally barred, because Texas offers procedures for untimely and subsequent application. *See* TEX. CODE CRIM. P. ANN. art. 11.071 §§ 4A, 5.

Because the district court rejected the disputed claims on the merits, and because we find that reasonable jurists would not disagree, we do not need to entertain the question whether any of the claims is unexhausted or procedurally defaulted. Section 2254(b)(2) confirms that a habeas petition "may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."[8]

## V.

A habeas petitioner can make a constitutional due-process claim by showing that "(1) the prosecutor suppressed evidence, (2) favorable to the defense, and (3) material to guilt or punishment." *Pippin v. Dretke*, 434 F.3d 782, 789 (5th Cir. 2005) (citing *Brady*, 373 US. at 87). Evidence is material if there is a reasonable probability that the outcome would have been different had it been disclosed to the defense. *Id.* The duty to disclose applies even without a request where it is exculpatory and "would be of sufficient significance to result in the denial of the defendant's right to a fair trial." *Kyles v. Whitley*, 514 U.S. 419, 433

---

[7] *See Coleman v. Thompson*, 501 U.S. 722, 750 (1991) ("In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.").

[8] *See Daniel v. Cockrell*, 283 F.3d 697, 702 (5th Cir. 2002); *see also Miller v. Dretke*, 431 F.3d 241, 245 (5th Cir. 2005) ("As noted, under § 2254(b)(2) we can *deny* (but *not* grant) [petitioner's] non-exhausted claim. Because we hold [petitioner] is *not* entitled to habeas relief on the *Brady*-claim, we need not decide whether the district court erred in considering it.").

(1995) (internal quotation marks omitted). The disclosure rule also applies to evidence in police possession, even if the prosecutors are not aware of its existence. *Strickler v. Greene*, 527 U.S. 263, 280–81 (1999).

Hall raised a general *Brady* claim in his state habeas petition, arguing that "the prosecution violated Petitioner's constitutional rights . . . by failing to disclose to the defense the existence of an immunity agreement between the prosecution and an unidentified prosecution witness."[9] The state argued such agreements did not exist. The prosecutors testified that the state had prepared draft immunity agreements for Murgatroyd and Eddy, in case either refused to testify, but the agreements were never executed, nor were the witnesses informed of their existence. Notably, Hall did not call Eddy or Murgatroyd to testify to having signed an agreement. Because the state petition was dismissed, neither the state habeas trial court nor the CCA addressed the merits.

In his federal habeas petition, Hall broadened the claim, stating that the state had failed to disclose "material evidence favorable to him under *Brady*." Hall specified that the state had violated *Brady* by failing to disclose immunity agreements with Eddy and Murgatroyd; a police-offered deal with prosecution witness Chase Hale; and correspondence between Eddy and a prosecutor. The district court rejected all the *Brady* claims.

First, the court found Hall's *Brady* claims about Hale and correspondence with Eddy to be unexhausted for failure to raise them either in the state petition or at the state habeas hearing. In addition, the court held that Hall would not be able to return to state court with those claims, nor did he have good cause to avoid procedural default. Despite this, the court addressed the merits of all

---

[9] Hall did not identify the alleged witnesses as Eddy and Murgatroyd until the evidentiary hearing before the state habeas trial court.

three *Brady* claims.[10]  *See* § 2254(b)(2).  Because the state court had not examined any of those claims on the merits, the district court reviewed each *de novo*.  *See Cone*, 556 U.S. at 472.  We review each claim separately to determine whether Hall has shown that reasonable jurists "would find the district court's assessment of the constitutional claims debatable or wrong."  *Slack*, 529 U.S. at 484.

### A.

The district court determined that Hall did not present a successful *Brady* claim on the alleged immunity agreements for Eddy and Murgatroyd.  Under the first prong of *Brady*, the court held that Hall failed to show that the prosecution actually suppressed evidence.

Hall's only support was the unsigned immunity agreements and an affidavit by Eddy recanting his trial testimony.  The court declined to find Eddy's affidavit credible, considering the absence of a signed immunity agreement; Eddy's and Murgatroyd's trial testimony that they were not operating under any agreements with the state; the testimony of the state prosecutors that no immunity agreements were executed; the absence of testimony or sworn statement by either witness that he had accepted immunity; Eddy's criminal record; and Eddy's friendship with Hall.  Even assuming an agreement existed, the court found that the materiality prong of *Brady* failed—Eddy was not a key witness; his testimony was merely corroborative; and had counsel been able to impeach him, it would not have affected the outcome of Hall's underlying trial.

Reasonable jurists could not debate the district court's finding that "there

---

[10] Rejecting the state's arguments, the court found that Hall had fairly presented the state habeas court with a *Brady* claim as to the disclosure-of-immunity agreements.  In so holding, the court relied on Hall's introduction of evidence that identified Eddy and Murgatroyd as the recipients of the alleged agreements.

No. 12-70005

is no credible evidence now before this Court establishing the prosecution ever entered into any immunity agreement with Eddy, Murgatroyd, or any other prosecution witness in connection with Petitioner's capital murder trial." A *Brady* claim is not triggered without the threshold finding of relevant evidence.[11]  *See Pippin*, 434 F.3d at 789.  Hall relies on speculation, arguing that the agreement could have been tacit and unwritten, relying solely on Eddy's affidavit recanting his testimony against Hall.  Without any evidence, reasonable jurists could not debate the district court's conclusion that the state did not suppress evidence of immunity agreements.[12]

B.

The district court rejected—as "nonsensical"—Hall's *Brady* claim based on an alleged failure to disclose a secret police deal with Hale.  The court found no suppression that would support a *Brady* claim.

In a pretrial interview, Hale told Halls counsel about the reneged promise made to him, and counsel even used that information on cross-examination of Hale during the trial.  The district court held that even assuming evidence was suppressed, it would not have been material so as to change the outcome of the trial.  The court reasoned that Hale's testimony was merely corroborative, and he lacked personal knowledge of the underlying crime.

Reasonable jurists could not debate the holding that Hall failed to show evidence was actually suppressed.  As the district court stated, Hall "cannot rely upon information his trial counsel actually had in their possession prior to trial

---

[11] The parties also debate whether the draft agreements were even suppressed, if they were found to be agreements that should have been disclosed.  The state had an open-file policy, but Hall argues that the state should have affirmatively turned over evidence.  We do not reach that question.

[12] Because Hall fails to make a substantial showing on the first *Brady* prong, we do not need to address the holding that any immunity agreements would not have been material.

10

No. 12-70005

. . . as the basis for a *Brady* claim."[13]

## C.

The district court also rejected the assertion that Eddy's pretrial corres-pondence with the prosecution was a sufficient *Brady* claim.[14]  The court found nothing in those writings that showed evidence of a *quid pro quo* relationship that should have been disclosed.  Again, the court held that impeaching Eddy on his correspondence with the state would not have affected the outcome of the trial, considering the overwhelming evidence against Hall and that Eddy had expressed doubt over Hall's guilt.

Reasonable jurists could not debate the district court's determination that Eddy's correspondence did not support a valid *Brady* claim.  Hall fails to show that the correspondence is evidence of an agreement.  As the district court elab-orated, the letters merely show Eddy's offer to testify against Hall and a request for information about his return date.

---

[13] Again, because that finding forecloses a successful *Brady* claim, we do not need to decide whether reasonable jurists would debate the district court's holding on materiality.

[14] The disputed letter from Eddy to the district attorney's office stated,

> I am writing to find out what is going on with your case to find out if you still will be bringing me back to El Paso to speak with me about Justen and what I know of him because I do have a couple of things to say that I didn[']t tell the detectives when they first questioned me[.]  I do not know if they will be of any help but I am willing to tell you whatever I do know about justen [*sic*] and what happened.  If you would please get back to me ASAP about this matter and let me know if I really am going to EPT because I do not want to get my hopes up about seeing my family and then end up not going to EPT[.  T]hank you for your time and once again I do look forward to helping out any way possible[.]  I hope to see and speak to you soon.

The response from the assistant district attorney merely laid out the dates of trial and when the evidence portion was estimated to begin.  The letter gave Eddy a time frame of when he could be expected to be brought to El Paso and when he could expect to return to Indiana.

No. 12-70005

## D.

Alternatively, Hall requests a remand for an evidentiary hearing on his *Brady* claims. We review the denial of the hearing for abuse of discretion. *Murphy v. Johnson*, 205 F.3d 809, 815 (5th Cir. 2000). We grant a hearing under this standard "only if the Appellant[] produce[s] independent indicia of the likely merit of [his] allegations." *United States v. Edwards*, 442 F.3d 258, 264 (5th Cir. 2006) (internal quotations omitted).

On federal habeas review, § 2254(e)(2) prohibits an evidentiary hearing where "the applicant has failed to develop the factual basis of a claim in State court proceedings," unless

(A) the claim relies on—

> (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or

> (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and

(B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

Furthermore, those narrow exceptions alone are not enough—the district court retains discretion whether to grant an evidentiary hearing. *Murphy*, 205 F.3d at 815; *Clark v. Johnson*, 202 F.3d 760, 765 (5th Cir. 2000).

The district court's rejection relied on *Murphy*, 205 F.3d at 816. in which this court denied an evidentiary hearing for similar allegations of "an undisclosed secret deal." We found the request "tantamount to an impermissible fishing expedition," because the claim was based on only general allegations rather than a "specifically alleged factual dispute." *Id.* at 816–17. The district court

12

No. 12-70005

held that Hall failed to provide specific facts showing that any agreements existed and that even if they existed, "there is still no reasonable probability the outcome of either phase of Petitioner's capital murder trial would have been different." As in *Edwards*, 442 F.3d at 266 n.7, when presented with conclusional claims that "failed to provide 'independent indicia' of the likely merits of [the] allegations and instead rely on speculation based on a misreading of the record," the district court did not abuse its discretion.

## VI.

Hall seeks a COA on his IAC claims, asserting that he "has made a substantial showing of the denial of a constitutional right." § 2253(a). Hall's claim is based on the contentions that his lawyer (1) was sleeping during trial; (2) failed to investigate and present mitigating evidence; (3) made prejudicial comments during the sentencing phase; and (4) made critical errors during jury selection.

To establish IAC. a petitioner must show (1) that counsel was so deficient that he was not functioning as "the counsel" and (2) that "errors were so serious as to deprive the defendant of a fair trial." *Washington*, 466 U.S. at 687. In measuring claims of deficiency, we look to "prevailing professional norms" rather than specific guidelines. *Wiggins v. Smith*, 539 U.S. 510, 521 (2003). The examination is "a context-dependent consideration of the challenged conduct as seen 'from counsel's perspective at the time.'" *Id.* at 523 (quoting *Washington*, 466 U.S. at 689). Importantly, "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Washington*, 466 U.S. at 690.

To determine whether the outcome was prejudiced under the second prong, "[t]he likelihood of a different result must be substantial, not just conceivable." *Harrington v. Richter*, 131 S. Ct. 770, 792 (2011). In considering whether the

No. 12-70005

result would have been different, "a court hearing an ineffectiveness claim must consider the totality of the evidence before the judge or jury."[15]

The state court did not examine any of the IAC claims on the merits, so the district court reviewed each *de novo*. *See Cone*, 556 U.S. at 472. We deny a COA for failure to make a substantial showing of the denial of a constitutional right, because reasonable jurists would not debate the district court's assessment on the merits. § 2253(c)(2); *Slack*, 529 U.S. at 484.

## A.

Approximately five years after the conclusion of his trial, Hall, for the first time, complained that his attorney had been sleeping during his state trial. Because Hall did not raise that claim in the state courts, either on direct appeal or in his state habeas application, the district court found the claim unexhausted. Furthermore, the district court found there was no possibility Hall could return to state court to obtain review of the claim, so it is procedurally defaulted. In the alternative, the district court rejected this habeas claim on the merits. *See* § 2254(b)(2).

Jurists of reason would not debate the rejection of Hall's claim. The court correctly held that Hall is not owed a presumption of prejudice as was found in *Burdine v. Johnson*, 262 F.3d 336 (5th Cir. 2001), because Hall was represented at trial by two attorneys. A presumption applies where the defendant is completely denied assistance of counsel. *United States v. Cronic*, 466 U.S. 648, 659 (1984). Based on the district court's thorough examination of the record, finding that co-counsel actively participated at trial, reasonable jurists could not debate

---

[15] *Brown v. Thaler*, 684 F.3d 482, 491 (5th Cir. 2012) (citation omitted), *modified on other grounds on denial of reh'g en banc*, 2012 U.S. App. LEXIS 17489 (5th Cir. Aug. 14, 2012) (per curiam), *petition for cert. filed* (U.S. Nov. 13, 2012) (No. 12-7258).

No. 12-70005

the finding that Hall remained represented by counsel.[16] Without a presumption of prejudice, the court also found that Hall failed to allege any facts or evidence that he was prejudiced by the alleged head-nodding or to show that the co-counsel was not defending him during those times.[17]

## B.

Hall claims that his attorney failed to investigate and present mitigating evidence. He contends that counsel should have presented additional testimony describing his rough childhood. He argues that prevailing norms require counsel to conduct a thorough investigation for mitigating evidence. He relies on *Wiggins*, 539 U.S. at 534, which held that the attorney was deficient for failing to investigate petitioner's background after uncovering information that would cause a reasonably competent attorney to inquire further.

To determine whether counsel was deficient, the district court extensively examined the mitigating evidence that Hall's attorney presented—his father, step-mother, step-sister, two mental health experts, and others who knew him— and their testimony about his upbringing and mental health. Despite Hall's claims, the court found that "Petitioner's trial counsel did not utterly fail to furnish the jury with mitigating evidence during the punishment phase of trial."

The court noted that Hall had presented no evidence to show that counsel's strategic decisions and subjective decisionmaking were objectively unreasonable under *Washington*. Hall could not argue that counsel did not investigate,

---

[16] Furthermore, any extension of *Burdine* to this situation is foreclosed under *Teague v. Lane*, 489 U.S. 288 (1989), which bars federal courts from applying new constitutional rules of criminal procedure on collateral review.

[17] The district court also determined that Hall, to satisfy the deficiency prong, lacked credible proof that his attorney was ever sleeping. His only evidence relied on the vague and conflicting statements of two jurors, five years after the fact. Because we find no prejudice, we do not examine this finding.

15

because he showed no evidence that counsel was unaware of additional possible witnesses; nor did he address that counsel may make strategic decisions to avoid evidence that could be "double-edged."[18]

Reasonable jurists could not debate the conclusion that counsel's failure to introduce further mitigating evidence did not violate the Sixth Amendment. As the district court noted, Hall made no effort to demonstrate what counsel knew and did not know; he assumes that counsel failed to investigate additional mitigating witnesses, ignoring that decisions not to call certain witnesses may have been part of a trial strategy.[19] A lack of further investigation is not, without more, unreasonable.

"In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." *Washington*, 466 U.S. at 691. "We must be particularly wary of arguments that essentially come down to a matter of degrees. Did counsel investigate enough? Did counsel present enough mitigating evidence? Those questions are even less susceptible to judicial second-guessing." *Dowthitt v. Johnson*, 230 F.3d 733, 743 (5th Cir. 2000) (internal quotations omitted). Reasonable jurors could not debate the determination that counsel was not deficient, considering Hall offers no evidence to impugn his counsel's objective decisionmaking.[20]

---

[18] The district court also determined that Hall failed to show how counsel's decision prejudiced the outcome, stating that any mitigating testimony "pales in comparison to (1) the overwhelming evidence the prosecution presented . . . and (2) the negative impact . . . during which Petitioner refused to accept any responsibility for his criminal misconduct."

[19] *See Moore v. Quarterman*, 534 F.3d 454, 468 (5th Cir. 2008) (denying a COA on IAC grounds where petitioner "failed to provide *any evidence at all* regarding the thought process underlying his trial counsel's decisionmaking," preventing the court from knowing whether there was a strategic decision not to use witnesses).

[20] We therefore need not consider the district court's conclusion on *Washington*'s preju-
(continued...)

No. 12-70005

C.

Hall makes an IAC claim based on his attorney's closing argument during the sentencing phase, including the comment that Hall "doesn't deserve to not be killed." Hall assumes that strategy is "obviously flawed."

The district court rejected that claim, finding that Hall had pulled statements from the closing argument out of context. The attorney's strategy involved asking rhetorical questions and responding with appeals to the jurors' intellect by offering reasons why Hall should be spared. Reviewing the entire closing, the court found this method reasonable, noting that Hall's failure to show remorse would have "rendered any attempt to appeal to the jury's sympathies a dubious strategic choice."[21]

No reasonable juror could debate that determination. Hall cites only cases in which this court found no legitimate trial strategy behind an attorney's questionable actions.[22] Importantly, "a conscious and informed decision on trial tactics cannot be the basis for constitutionally ineffective representation unless it is so ill chosen that it permeates the entire trial with obvious unfairness." *Daniels v. Maggio*, 669 F.2d 1075, 1079 (5th Cir. 1982). Considering the context of the attorney's statements in his closing argument, as well as the facts of the case, reasonable jurists could not dispute the holding that counsel's actions were not deficient.[23]

---

[20] (...continued) dice prong.

[21] In response to the prejudice prong, the district court held that there was no reasonable probability that, but for this closing argument, the sentence would have been different.

[22] *See, e.g.*, *Richards v. Quarterman*, 566 F.3d 553, 567 (5th Cir. 2009); *United States v. Rusmisel*, 716 F.2d 301, 310 (5th Cir. 1983).

[23] We do not need to address the second prong of *Washington*.

No. 12-70005

D.

Hall maintains that his constitutional right to IAC was violated when counsel (1) agreed to simultaneous juror strikes; (2) agreed to excuse venire-members opposed to the death penalty; and (3) failed to object to the jury instructions. Under the deferential *Washington* test, 466 U.S. at 690, a jurist of reason could not debate the rejection of Hall's claims.

Hall asserts that counsel's representation was deficient because he agreed to simultaneous juror strikes rather than forcing the state to strike first as allowed under Texas law. Specifically, Hall points to two of the strikes counsel used that were simultaneously exercised by the state. Hall argues that counsel's conduct fell below the professional norm because counsel did not understand the benefit of forcing the state to strike first.

The district court, contrary to Hall's argument, found counsel's jury strike method to be a legitimate strategy. Counsel testified that he negotiated the simultaneous-strike agreement with the state in return for the ability to inter-view the entire panel before he exercised a challenge.[24] Because counsel had a strategic reason to use his preferred juror-strike system, instead of the optional statutory system, deference should be given to counsel's judgment. *Washington*, 466 U.S. at 690. No reasonable jurist would debate the holding that counsel's conduct was not deficient.

Next, Hall asserts that counsel's agreement with the state to excuse veniremembers opposed to the death penalty qualified as IAC. Hall contends that, because counsel provided no tactical reason for that decision, we cannot give it any deference.

Counsel testified that he agreed to excuse only those who were so opposed

---

[24] The court also rejected that any prejudice occurred, because peremptory challenges can be "withheld altogether without impairing the constitutional guarantee of an impartial jury and a fair trial." *Georgia v. McCollum*, 505 U.S. 42, 57 (1992).

18

to the death penalty that they were incapable of performing juror duties; that the excusal applied only to those who consistently expressed opposition; and that he agreed to excuse only those jurors whom he did not like. Based on the testimony, the district court found Hall had failed to show any objective unreasonableness. Furthermore, the court said Hall failed to identify any specific excused prospective jurors who would not have been excused otherwise. Because we give deference to counsel's judgment, and because Hall failed to identify specific jurors whose exclusion affected the outcome, reasonable jurists would not debate the holding.

Hall also argues that counsel should have objected to the trial court's failure to administer Texas Code of Criminal Procedure article 35.17(2) *voir dire* questions to the prospective jurors about the principles of "reasonable doubt, burden of proof, return of indictment by grand jury, presumption of innocence, and opinion." Hall specifically pointed to one juror who was allegedly confused about the standard of reasonable doubt and was subsequently empaneled.

After examining the record, the district court found that the juror singled out by Hall was not confused or misinformed. In fact, Hall's counsel questioned this juror extensively on the principles of reasonable doubt and burden of proof. Hall is unable to state why counsel's actions were objectively unreasonable or how failing to have a judge administer the questions is a violation of constitutional rights. The court found counsel's actions to be reasonable, because counsel examined the juror in question about the article 35.17 subjects and requested the court instruct the juror on reasonable doubt.[25] Without a showing of objectively unreasonable behavior and deferring to counsel's judgment, reasonable jurists could not debate the holding that counsel's actions were not deficient.

---

[25] The court further held that the overwhelming amount of evidence in support of the verdict removes any possibility that but for counsel's failure to object, the outcome would have been different.

No. 12-70005

## VII.

An involuntary confession is unconstitutional under the Fourteenth Amendment. *Sims v. Georgia*, 385 U.S. 538, 543–44 (1967); *Williams*, 727 F.2d at 1390. "[T]he state bears the burden of persuading the court by at least a preponderance of the evidence that the confession was voluntary." *Williams*, 727 F.2d at 1389–90. Determining involuntariness involves an examination of "whether a defendant's will was overborne by the circumstances surrounding the giving of a confession. The due process test takes into consideration the totality of all the surrounding circumstances—both the characteristics of the accused and the details of the interrogation." *Dickerson v. United States*, 530 U.S. 428, 434 (2000) (citations and internal quotation marks omitted).

Though there are many factors to consider, "a defendant's mental condition, by itself and apart from its relation to official coercion, should [never] dispose of the inquiry into constitutional 'voluntariness.'" *Colorado v. Connelly*, 479 U.S. 157, 164 (1986). Taking into account the particular circumstances, the court should "determin[e] the factual circumstances surrounding the confession, asses[s] the psychological impact on the accused, and evaluat[e] the legal significance of how the accused reacted." *Schneckloth v. Bustamonte*, 412 U.S. 218, 225–26 (1973). There must be "coercive police activity" for a finding of an involuntary confession under the Fourteenth Amendment. *Connelly*, 479 U.S. at 167.

On direct appeal to the CCA, Hall argued that his confession was involuntary and that the trial court erred in denying his motion to suppress. Hall argued that he was suicidal, denied medication, and had not slept for several days before the arrest. The CCA also considered evidence that the detective interviewing Hall advised him of his rights, and Hall coherently waived them. A second detective testified that Hall was also coherent when he signed the confession. Furthermore, Hall testified that he voluntarily chose not to take his medications. Considering the evidence in the light most favorable to the trial

court, and "[e]ven considering all of [Hall's] allegations in the best light possible," the CCA rejected Hall's claim for a lack of "evidence of overreaching by law enforcement."

The federal district court reviewed the claim under the AEDPA standard, holding that the CCA's determination "was neither contrary to, nor involved an unreasonable application of, clearly established Federal law . . . nor an unreasonable determination of the facts in light of the evidence presented . . . ." The court held that the CCA "accurately described the record before that court as bereft of any evidence showing there was any police coercion." The court pointed to the fact that the state presented sufficient evidence that Hall was alert, was coherent, and was provided *Miranda* warnings, yet Hall put on no evidence to contradict the state or to demonstrate coercion.

A decision is "contrary to" clearly established law under § 2254(d)(1) "if it applies a rule that contradicts the governing law set forth in Supreme Court cases . . . or if the state court decide[s] a case differently than the United States Supreme Court previously decided a case on a set of nearly identical facts." *Roberts v. Thaler*, 681 F.3d 597, 604 (5th Cir.), *cert. denied*, 133 S. Ct. 529 (2012). Alternatively, a decision is "an unreasonable application" of clearly established federal law if it "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case." *Id.* "An unreasonable application is different from a merely incorrect or erroneous application; the state court decision must be an objectively unreasonable application." *Rogers v. Quarterman*, 555 F.3d 483, 489 (5th Cir. 2009). Section 2245(d)(2) asks whether the proceeding "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."

Before this court, Hall argues that reasonable jurists could debate the conclusion that the CCA's denial of his claim was not contrary to or an unreasonable application of clearly established federal law. Maintaining that a suspect's men-

tal condition makes the confession unconstitutional, Hall contends that the detectives were aware of and then took advantage of his condition.

Under the deferential standard of review, reasonable jurists could not debate the district court's conclusions under § 2254(d)(1). Federal law, as determined by the Supreme Court, requires a totality-of-the-circumstances review in determining voluntariness. *Dickerson*, 530 U.S. at 434. The district court correctly noted that the CCA considered all the evidence and concluded there was nothing demonstrating the police engaged in coercive activity. *See Connelly*, 479 U.S. at 167. Although Hall argues that his mental condition alone is sufficient to make his confession involuntary, the CCA's decision to weigh his condition as one of many factors was not contrary to or an unreasonable application of clearly established federal law.[26] Considering that the CCA applied the law consistently with Supreme Court precedent, a reasonable jurist could not disagree with the denial of habeas relief.

Finally, a reasonable jurist could not disagree with the district court's determination that, under § 2254(d)(2), the CCA's denial of the claim was not based on an unreasonable determination of the facts. The court worked through the evidence presented, giving proper deference to the state court under § 2254(e)(1). Because "a determination of a factual issue made by a State court shall be presumed to be correct[,] [t]he applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." § 2254(e)(1).

---

[26] *Connelly*, 479 U.S. at 164. Hall cites other federal courts to argue that mental conditions are an overriding factor. The decisions of the lower federal courts, however, do not "constitute 'clearly established Federal law, as determined by the Supreme Court,' [and] therefore cannot form the basis for habeas relief under AEDPA." *Parker v. Matthews*, 132 S. Ct. 2148, 2156 (2012) (per curiam); *accord Lockyer v. Andrade*, 538 U.S. 63, 71 (2003).

No. 12-70005

## VIII.

Hall claims the trial court violated his constitutional rights by denying a motion for continuance. Both parties agree that Hall's counsel requested a continuance of a little less than a month. In a written motion, counsel specified that the continuance would allow, among other things, to have some DNA evidence tested or retested; to procure an expert criminologist; and to locate some witnesses.

On direct appeal to the CCA, Hall challenged the denial, arguing that the continuance was needed to investigate problems with the DNA laboratory work and to provide time to investigate whether the victim's family was involved with gangs. Hall framed the denial as an abuse of discretion under Texas law, alleging he was unable to obtain *Brady* material. The court noted that Hall did not state which tests were questionable—other than the DNA found in the victim's truck—and whether Hall was ever in the victim's truck was not a disputed fact. Concluding that Hall had failed to demonstrate any prejudice to his defense, the CCA denied the claim.

In the district court, Hall changed the basis of his claim, alleging that the trial court violated his Fifth and Fourteenth Amendment rights in denying the continuance. The state argued before the district court that Hall failed to exhaust his claims by not raising the due-process issue before the state court. Hall countered that because *Brady* involves due-process rights, his claims were exhausted. Despite the state's arguments, the district court proceeded to examine the merits of the due-process claim.[27]

"There are no mechanical tests for deciding when a denial of a continuance

---

[27] The district court bypassed the CCA's *Brady* arguments, noting that federal habeas review involves examining only the decision, not the opinion or explanation. *See Maldonado v. Thaler*, 625 F.3d 229, 239 (5th Cir. 2010); *St. Aubin v. Quarterman*, 470 F.3d 1096, 1100 (5th Cir. 2006).

is so arbitrary as to violate due process. The answer must be found in the circumstances present in every case, particularly in the reasons presented to the trial judge at the time the request is denied." *Ungar v. Sarafite*, 376 U.S. 575, 589 (1964). The district court found that the trial record undermined Hall's arguments that more time was needed to procure experts, pointing to the received testimony of mental health expert Dr. Aeschbach, expert criminalist Angelina Reeves, and expert criminologist William Gant.

Likewise, the court rejected Hall's argument that a continuance was necessary to investigate the DNA laboratory, noting Hall's failure to allege "specific facts before the state court showing how a challenge to the efficacy of the DNA evidence in his case would have proven beneficial to [Hall]." The court also considered that the trial occurred already two years after the indictment. In addition, the court found nothing arbitrary in the trial judge's decision, considering the concern for hardship on the jurors. Under AEDPA, the district court held that the CCA's rejection was neither contrary to, nor involving an unreasonable application of, clearly established federal law, nor based on an unreasonable determination of the facts.

Because the district court rejected Hall's claim on the merits, Hall must demonstrate that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack*, 529 U.S. at 484. He has not carried that burden under AEDPA.

The district court's determination, considering the lack of evidence before the trial court, that the CCA did not unreasonably apply clearly established federal rules concerning due process, cannot be debated by reasonable jurists. Because a due-process claim arising from a denial of a continuance is a fact-specific inquiry, the district court combed through the evidence presented to the trial court and before the CCA. *See Ungar*, 376 U.S. at 589. Hall is still unable to make a substantial showing how the denial of a continuance was so arbitrary

No. 12-70005

as to affect his due-process rights. Furthermore, reasonable jurists would not debate the district court's reliance on the state court's factual findings, considering Hall's lack of evidence to prove the state court's findings were incorrect. *See Miller–El*, 537 U.S. at 340.

## IX.

We deny Hall's motion to stay federal proceedings. The federal district court denied Hall's motion for a stay, explaining that "there is not even a remote possibility that the CCA will ever agree to entertain the merits of the claims."[28] Hall petitions this court for a stay to return to state court to exhaust his remedies,[29] staking his argument on *Ex parte Medina*, 361 S.W.3d 633 (Tex. Crim. App. 2011).

In *Medina*, the attorney for the state habeas petitioner was Robin Norris— the same lawyer who represented Hall for his state habeas claim. In *Medina*, Norris filed an application so deficient that both the trial court and the state agreed the document did not qualify as an actual writ application. *Id.* at 635. Relying on *Ex parte Kerr*, 64 S.W.3d 414, 421 (Tex. Crim. App. 2002), the court established a new filing date, dismissed Norris, and allowed the petitioner to re-file an "initial" and proper writ. *Medina*, 361 S.W.3d at 643.

As he had done for that petitioner, Norris filed a short and conclusory application for a writ of habeas corpus on behalf of Hall. After that, however, the facts of Hall's case diverge. Unlike the result in *Medina*, neither the state nor the court *sua sponte* found Hall's application to be especially problematic. Also, the CCA did not consider the merits of Hall's application, because "the

---

[28] *See Rhines v. Weber*, 544 U.S. 269, 277 (2005) ("[T]he district court would abuse its discretion if it were to grant him a stay when his unexhausted claims are plainly meritless.").

[29] *See Ex parte Soffar*, 143 S.W.3d 804, 807 (Tex. Crim. App. 2004); *see also Rhines*, 544 U.S. at 277.

question before the Court [was] whether to dismiss the attorney-filed writ application."

"[I]t likely would be an abuse of discretion for a district court to deny a stay and to dismiss a mixed petition if the petitioner had good cause for his failure to exhaust, his unexhausted claims are potentially meritorious, and there is no indication that the petitioner engaged in dilatory litigation tactics." *Rhines*, 544 U.S. 269, 278 (2005).  Even assuming Hall's initial application were deficient, *Medina* does not guarantee a do-over for Hall.  The court in *Medina* allowed a mulligan after finding it was not the client's fault that Norris had filed an incomplete application.  Hall, on the other hand, requested a dismissal, despite the court's warning.

Second, the case is likely meritless because, generally, Texas does not allow successive petitions "[e]xcept under extraordinary circumstances." *Neville v. Dretke*, 423 F.3d 474, 480 (5th Cir. 2005).  Hall cannot point to Norris as "good cause" for the failure to exhaust—not only did Hall choose to dismiss his habeas application in the first instance, but "[a]ttorney ignorance or inadvertence is not 'cause' because the attorney is the petitioner's agent when acting, or failing to act, in furtherance of the litigation, and the petitioner must bear the risk of attorney error." *Coleman*, 501 U.S. at 753.

Finally, Hall's motion for a stay, only after the federal district court denied his habeas petition, suggests that Hall strategically waited for the outcome and now seeks a second bite at the apple.  "In particular, capital petitioners might deliberately engage in dilatory tactics to prolong their incarceration and avoid execution of the sentence of death." *Rhines*, 544 U.S. at 277–78.

In summary, there is no merit to Hall's claims.  The motions for a COA and for a stay are DENIED.