# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

April 13, 2023

Lyle W. Cayce
Clerk

No. 20-70021

Travis Dwight Green,

*Petitioner—Appellee*,

*versus*

Bobby Lumpkin, Director, Texas Department of Criminal Justice, Correctional Institutions Division,

*Respondent—Appellant*.

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:13-cv-1899

Before Willett, Ho, and Duncan, *Circuit Judges*.

Per Curiam:[*]

Twenty years ago, a Texas state court convicted Travis Dwight Green of capital murder based on DNA evidence and sentenced him to death. Both the conviction and capital sentence were later affirmed on both direct and state habeas review. But a federal district court subsequently granted habeas

---

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

relief on two grounds—that Green had been incompetent to stand trial, and that he received ineffective assistance of trial counsel.

It's undisputed that neither of these claims was ever presented to the state habeas court, so both claims were procedurally defaulted. The district court nevertheless reached the merits, concluding that Green had demonstrated both cause and prejudice sufficient to overcome the procedural default on both claims.

We disagree. As to his incompetence claim, Green theorized that he was excused from procedural default because his state habeas counsel had abandoned him. We agree that attorney abandonment can, in some cases, constitute cause sufficient to overcome procedural default. But to the extent his attorney abandoned him, it did not result in Green's forfeiture of his claim. That's because it was too late under state law to seek habeas relief on his incompetence claim. Notably, neither Green nor the district court offers any theory of timeliness to the contrary.

As to his claim of ineffective trial counsel, Green contends that he was excused from procedural default because his state habeas counsel was ineffective for failing to present this claim. But we think state habeas counsel had sufficient reason not to proceed with this claim. It was Green who repeatedly refused the assistance of trial counsel, after repeated warnings from the trial court not to refuse counsel as a delay tactic. Green only sought trial counsel after he was found guilty. Given the history of the proceedings and the trial court's repeated admonitions, trial counsel had good reason not to seek a continuance.

Because we find that Green cannot overcome the procedural default of either claim analyzed by the district court, we reverse.

No. 20-70021

## I.

In 1999, Green was arrested for the murder of Kristin Loesch. Loesch's boyfriend identified Green from a photo array as the man they had met and spent time with the night before her murder. The Medical Examiner concluded that Loesch had suffered sexual assault, strangulation, and blunt force trauma to her abdomen. Green's DNA matched that from samples taken during Loesch's autopsy.

After charging Green with capital murder, the State appointed two attorneys to represent him at trial. Months later, Green filed a pro se motion to dismiss his court-appointed attorneys. The court held a *Faretta* hearing and upheld Green's waiver of counsel as knowing and intelligent. *See Faretta v. California*, 422 U.S. 806 (1975). The court also appointed Green's attorneys to serve as standby counsel and "consultants."

The following month, the court appointed Tyrone Moncriffe to replace one of Green's standby attorneys. Several months later, Green's second standby attorney was permitted to withdraw due to Green's refusal to communicate with him or allow him to hire an investigator. Green then filed a motion to dismiss Moncriffe as well. The court denied it, leaving Moncriffe as Green's sole standby counsel for the remainder of pre-trial and trial proceedings.

Soon after, a new trial judge began presiding over Green's case and a second *Faretta* hearing was held. The court, again, found Green's waiver of counsel to be knowing and intelligent. Green then filed yet another motion to dismiss the court-appointed investigator and Moncriffe as standby counsel. During the court's hearing on this motion, the court announced it would *sua sponte* order Green to be psychologically evaluated for competency to stand trial and insanity. Neither evaluation was conducted at that time.

On the fifth day of voir dire, Moncriffe notified the court of his concern as to Green's competency. In response, the court ordered a competency evaluation "out of an abundance of caution." Dr. Mark Rubenzer evaluated Green and concluded that he did "not appear to have a serious mental disorder," that he had "sufficient present ability to consult with his attorney with a reasonable degree of rational understanding, and [had] a rational and factual understanding of the charge against him," and that he was "**COMPETENT** to stand trial." The case proceeded to trial the day Dr. Rubenzer's report was filed.

The day after the jury found Green guilty of capital murder, Green reasserted his right to an attorney. Moncriffe assumed Green's representation, and the penalty phase commenced one hour later. Moncriffe called eight lay witnesses, including Green's mother, brother, and cousin. Green's mental condition was the central theme of Moncriffe's closing argument: "One thing I know about Americans, too. We're not a society that kill [*sic*] sick people. We don't kill sick people. And I want you to think about that." After the jury's deliberations, the trial judge sentenced Green to death.

## A.

Ken Goode was appointed to represent Green on direct appeal. Goode raised nine points of error before the Texas Court of Criminal Appeals, including that the trial court erred in permitting Green to waive his right to counsel. The court overruled all nine points and affirmed Green's conviction and sentence. *See Ex parte Green*, 2013 WL 831504, at *1 (Tex. Crim. App. Mar. 6, 2013).

It is the conduct of state habeas proceedings that is at issue in this appeal. Ken McLean was appointed to represent Green in his state habeas proceedings. McLean filed an application for writ of habeas corpus in state

4

court that raised seven claims: three had been denied on direct appeal and four consisted of headings without supporting law or facts. The petition stated: "Applicant intends to develop the facts and law of these extra-record grounds for habeas relief with all deliberate speed." Importantly, the application did not address Green's competency to stand trial or Moncriffe's representation at the penalty phase—thereby creating the procedural default issue presented in this appeal.

The court subsequently granted McLean's request to extend the deadline to supplement Green's habeas petition, and set the new deadline for November 12, 2001. That deadline lapsed without any word from McLean. For the next six years, McLean had no contact with Green and made no filings on his behalf.

In 2007, the State moved for disposition of Green's habeas petition, and the court ordered "both parties [to] submit any additional filings on or before December 19, 2007." McLean subpoenaed Green's most recent prison psychological evaluation and then filed a brief "Statement of Counsel" with the court. In it, McLean stated that he "cannot in good faith" recommend that habeas relief be granted, repudiated Green's claims, and mischaracterized the contents of Green's psychological evaluation.

McLean passed away the following year, and the court appointed Daniel Easterling to represent Green. Four years later, the trial court adopted the State's proposed findings of fact without an evidentiary hearing. *Ex parte Green*, 2013 WL 831504, at *1. The Court of Criminal Appeals (CCA) subsequently adopted the trial court's findings and conclusions and denied Green's habeas petition on March 6, 2013. *Id.*

**B.**

Green timely filed a habeas petition in federal district court raising thirteen claims for relief. Most claims were dismissed, but the district court

found Green had demonstrated cause and prejudice sufficient to overcome procedural default as to the following claims: (1) Green had been incompetent to stand trial in violation of his Sixth and Fourteenth Amendment rights; and (2) Green received ineffective assistance of trial counsel ("IATC") in violation of his Sixth Amendment right, when Moncriffe failed to seek another competency hearing or a continuance to investigate mitigating evidence.

Because Green did not raise his incompetency or IATC claim in state court, they are procedurally defaulted. 28 U.S.C. § 2254(b)(1). The district court was thus permitted to reach the merits of these claims only if Green demonstrated both (1) "cause for the default" and (2) "actual prejudice as a result of the alleged violation of federal law." *Coleman v. Thompson*, 501 U.S. 722, 724 (1991), *holding modified by Martinez v. Ryan*, 566 U.S. 1 (2012). As to Green's incompetency claim, the court found that Green had been abandoned by his state habeas counsel, McLean, thus satisfying cause under *Maples v. Thomas*, 565 U.S. 266 (2012). As to Green's IATC claim, the court found that McLean provided constitutionally deficient representation as state habeas counsel, thereby establishing cause under *Martinez*, 566 U.S. at 17, and *Trevino v. Thaler*, 569 U.S. 413 (2013). Following a six-day evidentiary hearing, the district court granted Green's habeas petition on both grounds.

## II.

## A.

We first consider whether Green has demonstrated cause and prejudice sufficient to overcome the procedural default of his incompetency claim. Cause is established when "something *external* to the petitioner, something that cannot fairly be attributed to him . . . 'impeded [his] efforts to comply with the State's procedural rule.'" *Coleman*, 501 U.S. at 753

(alteration in original) (quoting *Murray v. Carrier*, 477 U.S. 478, 488 (1986)). "A factor is external to the defense if it cannot fairly be attributed to the prisoner." *Davila v. Davis*, 137 S. Ct. 2058, 2065 (2017) (cleaned up). To show prejudice, Green must demonstrate a reasonable probability that the state court would have granted relief on the incompetency claim had it been raised. *See Newbury v. Stephens*, 756 F.3d 850, 872 (5th Cir. 2014).

The Supreme Court has held that an attorney's abandonment of his or her client constitutes cause. *See Maples*, 565 U.S. at 289 . The reason for this is simple: When an attorney abandons his or her client without notice, it "sever[s] the principal-agent relationship." *Id.* at 281. At that point, the attorney's actions and omissions can no longer "be attributed to the [petitioner]." *Davila*, 137 S. Ct. at 2065 (cleaned up).

On the other hand, it is well-established that a state-habeas attorney's *negligence* does not satisfy cause, because the agency relationship remains intact, and the petitioner must "bear the risk of attorney error." *Coleman*, 501 U.S. at 753 (cleaned up). *See also Maples*, 565 U.S. at 282 (noting "the essential difference between a claim of attorney error, however egregious, and a claim that an attorney had essentially abandoned his client").

The parties dispute whether McLean's conduct rose to the level of abandonment, which satisfies cause, or constituted extreme negligence, which does not. But we need not ultimately decide this question. That's because any abandonment that might have occurred here did not take place until after the November 12, 2001 deadline for McLean to supplement Green's habeas petition. So even a diligent counsel who did not abandon his client could not have affected the proceedings, because any action by counsel would have been untimely.

Texas law requires capital habeas petitioners to present all state-habeas claims in their initial application. TEX. CODE CRIM. PROC. art.

11.071 § 5(a). Absent an applicable statutory exception—*i.e.*, unavailability of the claim or actual innocence, *see id.*—the state court will not entertain claims that appear for the first time in a successive application. *Muniz v. Johnson*, 132 F.3d 214, 221 (5th Cir. 1998) (citing *Ex parte Davis*, 947 S.W.2d 216, 221 (Tex. Crim. App. 1996)). Green conceded that, because McLean "had not asserted, even as a claim heading, that Mr. Green was tried while incompetent, . . . any attempt by him to plead the claim after the filing deadline would have been treated as an abuse of the writ." *See* Tex. Code Crim. Proc. art. 11.071 § 5(a), (f). Nor could Green satisfy a statutory exception because, as the district court found, his "contention that he was incompetent to stand trial . . . was ascertainable prior to his original petition."

Tellingly, neither Green nor the district court has even bothered to articulate, let alone substantiate, a theory of timeliness. They simply ignore the issue entirely. This case is unlike *Maples*, for instance, where counsel's abandonment resulted in the petitioner's missing an appeal deadline. *See* 565 U.S. at 288.[1]

---

[1] Texas law does endow the Court of Criminal Appeals with discretion to "establish a new filing date for the application" or "appoint new counsel to represent the applicant and establish a new filing date for the application" when counsel fails to timely file a proper habeas application. Tex. Code Crim. Proc. art. 11.071, § 4A(b)(3). Our court has recognized this authority, and the CCA has exercised it on occasion. *See Hall v. Thaler*, 504 F. App'x 269, 284 (5th Cir. 2012) (the CCA may "allow[] a mulligan after finding it was not the client's fault that [counsel] had filed an incomplete application"). *See also, e.g.*, *Ex parte Medina*, 361 S.W.3d 633, 635 (Tex. Crim. App. 2011) (appointing new counsel and setting a new filing deadline after finding petitioner's habeas application improper because it "merely states factual and legal conclusions" without "set[ting] out specific facts"); *Ex parte Kerr*, 64 S.W.3d 414 (Tex. Crim. App. 2002) (holding that petitioner's third writ application, filed after the court initially denied habeas relief, did not constitute a subsequent writ and was timely filed because the initial application was improper).

No. 20-70021

In sum, the default of Green's incompetency claim is attributable to McLean's failure to raise it in Green's initial habeas petition—rather than any subsequent abandonment under *Maples*. *See Ibarra v. Thaler*, 691 F.3d 677, 685 n.1 (5th Cir. 2012) ("Because counsel for [petitioner] who filed his first state habeas application did not abandon him, but simply did not raise issues [petitioner] now would like to argue, *Maples* is inapposite."), *vacated in part on other grounds on reh'g sub nom.*, *Ibarra v. Stephens*, 723 F.3d 599 (5th Cir. 2013); *Towery v. Ryan*, 673 F.3d 933, 940 (9th Cir. 2012) (per curiam) ("The failure to raise a claim, even a viable one, does not amount to abandonment."), *overruled on other grounds by McKinney v. Ryan*, 813 F.3d 798 (9th Cir. 2015) (en banc). *Cf. Maples*, 565 U.S. at 283 (finding abandonment where counsel severed attorney-client relationship "long before the default occurred").[2]

## B.

Next, we consider whether Green has overcome the procedural default of his IATC claim. Ineffective assistance of counsel in state-habeas proceedings establishes cause to overcome the default of a "substantial"

---

Neither Green nor the district court mention § 4A, and for good reason: Even assuming relief might have been available here, the statute makes clear that it's available only as a matter of discretion by the CCA. Here, Green presented his concerns about attorney abandonment and sabotage directly to the CCA, and the CCA did nothing. Given that the CCA has in the past exercised its § 4A discretion both *sua sponte* and upon written notification from a petitioner, the CCA's inaction here must be construed as a decision to decline to exercise whatever discretion available to it here under the statute. *See, e.g., Ex parte Mullis*, 2012 Tex. Crim. App. WR-76,632-01U (CCA exercising § 4A authority upon letter from petitioner); *Ex parte Blanton*, 2005 WL 8154137, at *1 (Tex. Crim. App. June 22, 2005) (CCA exercising § 4A authority *sua sponte*).

[2] Green also suggests that his incompetence throughout the state-habeas proceedings provide an alternative basis for satisfying cause. This argument is foreclosed by our precedent. *See Gonzalez v. Davis*, 924 F.3d 236, 244 (5th Cir. 2019) (per curiam) (holding mental incompetency does not satisfy cause to excuse default).

No. 20-70021

IATC claim. *Martinez*, 566 U.S. at 9; *see Trevino*, 569 U.S. at 429 (extending *Martinez* to Texas's procedural system). Our review of counsel's representation is "highly deferential." *Strickland v. Washington*, 466 U.S. 668, 689 (1984). A "fair assessment" requires "that every effort be made to eliminate the distorting effects of hindsight" and "evaluate the conduct from counsel's perspective at the time." *Id.* We must "affirmatively entertain the range of possible reasons [petitioner's] counsel may have had for proceeding as they did." *Cullen v. Pinholster*, 563 U.S. 170, 196 (2011) (cleaned up).

Here, even if Green has a substantial IATC claim, he cannot show that McLean was ineffective for failing to present it. Under the existing record, McLean would have known the following: trial counsel repeatedly asked the court for a psychiatric examination of Green, including just before trial; the trial court repeatedly admonished Green as to the grave risks inherent in proceeding pro se; Green's waiver of counsel was subjected to two *Faretta* hearings and twice found to be knowing and intelligent; a court-ordered psychological evaluation determined Green was not mentally ill and indeed competent to stand trial—just two days earlier and in direct response to trial counsel's earlier expressed concerns that Green had mental illness; Green repeatedly resisted counsels' attempts to hire an investigator; and the trial court frequently warned Green that proceeding pro se would not entitle him to "call time out," request "any slowing down, going back," or otherwise "delay" proceedings should he later decide to reassert his right to counsel.

Nonetheless, the district court found that McLean should have raised claims that Green's penalty-phase counsel failed to "request[] a competency hearing and [seek] a continuance to further investigate Green's mental condition." But on the record before him, McLean could reasonably have expected that any continuance request Moncriffe made would have been denied; and certainly any request for a *second* competency evaluation would have also been denied—along with jeopardizing Moncriffe's credibility with

10

the court. As the district court acknowledged: "When Green effectively fired his counsel months before trial . . . he placed an insurmountable roadblock in the way" of punishment-phase preparations. *See Sexton v. Beaudreaux*, 138 S. Ct. 2555, 2559 (2018) (counsel may reasonably choose not to bring claims or pursue options that counsel "reasonably . . . determined . . . would have failed"); *Rompilla v. Beard*, 545 U.S. 374, 383 (2005) (counsel is not unreasonable for failing to pursue something counsel has "good reason to think . . . would be a waste"); *Strickland*, 466 U.S. at 691 (when counsel has "reason to believe that pursuing certain investigations would be fruitless . . . counsel's failure to pursue those investigations may not later be challenged as unreasonable").

\* \* \*

Because Green is unable to overcome the procedural default of his claims, the district court was procedurally barred from evaluating the merits.

We reverse.